KLEIN, APPELLANT, *v.* CITY OF CINCINNATI, APPELLEE.

(No. 7498—Decided February 18, 1952.)

*Mr. John P. Strother* and *Mr. Sheppard I. Klein,* for appellant.

*Mr. Henry M. Bruestle,* city solicitor, *Mr. J. B. Grause, Jr.,* and *Mr. William A. McClain,* for appellee.

*Per Curiam.* This is an appeal on questions of law from a judgment of the Court of Common Pleas of Hamilton County, rendered in conformity to a verdict instructed for the defendant at the close of plaintiff's evidence.

The action was for personal injuries received by the plaintiff when he fell into a hole while attempting to cross a street in the city of Cincinnati in the nighttime.

There was substantial, if not conclusive, evidence that the plaintiff alighted from a bus, went to the southeast corner of Summit and Reading roads at about 6 p. m. and then attempted to cross to the southwest corner of such intersection. He states:

"Q. Calling your attention to February 1, 1949, did you have occasion to pass over that part of Reading road immediately opposite its intersection with Summit road? A. I passed over there every day, morning and night, going to work and at night coming from work.

"Q. I can't hear you? A. I pass over there every day, morning and night, going to and coming from work.

"Q. Did anything happen on February 1, 1949? A. Well, when I got off the bus on February 1st at about six o'clock or 6:30, I got off the bus where I always get off, and the bus went on, and I started across the street from the southeast corner and to the southwest corner, and as I walked five or six feet I fell in a hole, and I laid there. I could not get up. Luckily, I didn't get killed.

" * * *

"A. As I was crossing the road I fell in a hole.

"Q. In a hole? A. Yes, sir.

"Q. Where was that hole located; was that in Reading road or Summit road? A. On Reading road.

"Q. Was it in the west half or the east half of the road? A. It was in the east half."

On the question of constructive notice to the city, a witness stated:

"Q. Were you familiar with the condition of Reading road at the intersection of Summit road on February 1, 1949? A. I was.

"Q. How long prior, if you were familiar with it, how long prior to that date were you familiar with it? A. December 9, 1947, until that date.

"Q. December 9, 1947, to February 1, 1949? A. Yes.

"Q. If you know, describe the condition of that intersection of Reading road immediately opposite Summit road between December 9, 1947, and February 1, 1949. A. On the west side, that is near the north bound track, the west side of Reading road, the west half, there was a number of holes there."

Mr. Grause: "The north bound track is going up to the east side of Reading road. A. I am speaking of the west side. On the west side of Reading road at that intersection there were a number of large holes, and I would say, I am not exact, but I would say perhaps six that were spaced in close proximity to each

other. On the east side, the east half of Reading road at that intersection, there were also holes, at least three large holes.

"Q. Will you describe the size of those holes? A. They varied. The ones closer to the southwest part of the intersection were the worst in condition. There was one there I would say that was perhaps twelve to fourteen inches wide, and the depth, I would say in depth perhaps as much as eight inches, eight or nine inches deep, and then immediately to the north in that same intersection on the west side there was a hole perhaps slightly less in depth, nearly as large, and then immediately north on the west half there were a group of holes that were large in size but not quite as deep. And on the east side of Reading road where I counted about three large size holes. There was one nearly as large as the first hole I described on the west side, and there was two other large holes not quite as deep.

"Q. What means did you have of observing the condition of Reading road during that period of time from forty-seven to February 1, 1949? A. I had every means. I was driving an automobile daily.

"Q. How many times did you go in and out of there? A. A minimum of twice a day, going to the office and coming home from the office."

It seems that the basis of the action of the trial court was that the hole into which the plaintiff fell was not described with sufficient certainty to connect it with the evidence showing constructive notice to the city.

It would seem rather that such degree of certainty would be a matter for consideration in connection with the jury's view of the weight of the evidence.

Obviously, there was substantial evidence that plaintiff fell into one of the several holes which were in the part of the street in which substantial evidence indicated holes had remained unrepaired for a period suf-

ficiently long to permit the jury finding that the city had constructive notice thereof.

It is only by a hypertechnical, academic approach to the evidence that the action of the trial court can be sustained. There can be no question that the plaintiff was seriously injured in the location in which he said he fell. He was immediately picked up by a bystander and taken home. Plaintiff has located the area of his fall with sufficient particularity to indicate its identity with the area in which holes had existed for a considerable time.

Whether he was guilty of contributory negligence, and the factual questions arising from the evidence as to the location of the hole into which plaintiff fell were matters for the consideration of the jury under proper instructions from the court.

The trial court committed error in instructing a verdict for the defendant. The judgment is reversed and the cause remanded for a new trial.

*Judgment reversed.*

HILDEBRANT, P. J., and Ross, J., concur.

MATTHEWS, J., dissenting. The plaintiff testified that he could see when he stepped off the bus, and that he was thoroughly familiar with the condition of the street at that place. Still he stepped into a hole and was injured. No explanation whatever was given as to why he stepped into the hole or why he failed to avoid it.

It seems to me that under those circumstances, there is a failure of proof on the essential element of causal relation between the plaintiff's injury and the alleged negligence of the defendant.